Christopher Miller, Esq. (SBN 285606)
Garrett R. Miller, Esq. (SBN 284556)
Fabianna Olivares Miller, Esq. (SBN 285642)
The Miller Law Group
16 N. Marengo Ave., Suite 610
Pasadena, CA 91101
T. 626-240-0714
F. 323-477-2793

Attorneys for Defendant,
ADRIAN MARTINEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>vs.<br><br>ADRIAN MARTINEZ,<br><br>*Defendant.* | Case No.: 2:25-cr-692-MEMF<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT**<br><br>Indictment: August 20, 2025<br>PTC: August 5, 2026<br>Trial: August 17, 2026 |

Defendant Adrian Andrew Martinez, through his counsel of record, Christopher Miller and Garrett Miller, respectfully submits this Motion to Dismiss. This motion is brought pursuant to the Court's inherent supervisory authority, the Due Process Clause of the United States Constitution, and the Court's obligation to preserve the integrity, impartiality, and fundamental fairness of criminal proceedings before it. Mr. Martinez seeks relief necessary to ensure that these proceedings remain free from constitutional infirmity, prosecutorial conflict, and the appearance of impropriety that undermines public confidence in the fair administration of justice.

*UNITED STATES V. MARTINEZ*                                          MOTION TO DISMISS – 1

Adrian Martinez respectfully requests that the Court review the circumstances surrounding the initiation and continuation of the prosecution in this matter, as well as the conduct and involvement of the prosecuting authority, and grant such relief as the Court deems just and proper under the law. Through this motion, Mr. Martinez seeks an order to dismiss the pending indictment with prejudice. In the alternative to a dismissal, Mr. Martinez has made a sufficient showing to warrant discovery into the Government's charging decision and requests the Court to order discovery related to the charging decisions in this case involving then acting United States Attorney Bilal Essayli.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................5

    Cases........................................................................................................................5

FACTUAL BACKGROUND ..................................................................................6

    A.    Operation At Large and June 17, 2025, Enforcement Action...........................6

    B.    Arrival of Bystanders and Public Protest........................................................6

    C.    Physical Detention of Mr. Martinez.................................................................7

    D.    June 18, 2025, Memorandum Alleging Assault.................................................7

    E.    Public Allegations of Assault and Deterrent Messaging ..................................8

    F.    Video Evidence and Direction to Proceed and Charge......................................9

ARGUMENT ...........................................................................................................10

    A.    The Court has Already Determined that Bilil A. Essayli Was Not Lawfully Serving as Acting United States Attorney .............................................................10

    B.    Defendant Does Not Seek Re-Litigation of Issues Already Decided .............10

    C.    The Remaining Question Before the Court is The Appropriate Remedy ........11

    D.    In a Criminal Case, Participation by an Unlawfully Authorized Official in The Charging Decision Constitutes a Structural Defect Requiring Dismissal..............11

    E.    Substitution or Insulation is Inadequate..........................................................15

    F.    Discovery Request ...........................................................................................15

CONCLUSION.........................................................................................................15

EXHIBIT A ...........................................................................................................................17

EXHIBIT B ...........................................................................................................................20

**TABLE OF AUTHORITIES**

**Cases**

*United States v. Williams*, 504 U.S. 36, 47 (1992) ...............................................................11, 14

*United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977) ..................................................11

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024)....................................12, 13, 14

*United States v. Garcia*, 2025 WL 2784640 (D. Nev. Sept. 30, 2025)................................12, 13

*United States v. Giraud (Giraud I)*, 2025 WL 2196794 (D.N.J. Aug. 1, 2025) ........................12

*United States v. Giraud (Giraud II)*, 795 F. Supp. 3d 560 (D.N.J. 2025)……………….........12

*United States v. Bundy*, 968 F.3d 1019, (9th Cir. 2020) ............................................................13

## FACTUAL BACKGROUND

### A.  Operation At Large and June 17, 2025, Enforcement Action

On June 17, 2025, federal agents conducted an immigration enforcement action in Pico Rivera, California as part of a nationwide initiative described by the Department of Homeland Security as "Operation At Large." That morning, Border Patrol Agent Isaiah A. Hodgson was conducting interior immigration enforcement operations in Pico Rivera while in uniform and operating a marked Border Patrol vehicle. At approximately 8:45 a.m., Agent Hodgson entered a Lowe's parking lot located at 8600 East Washington Boulevard. The agent detained an individual later identified as Vivaldo Montes-Herrera and was subsequently placed inside the marked Border Patrol vehicle.

### B.  Arrival of Bystanders and Public Protest

Following the arrest of Mr. Montes-Herrera, multiple bystanders arrived at the scene. Several individuals stopped their vehicles, exited their cars, and positioned themselves near the Border Patrol vehicle. The Government later stated in a press release that "several other individuals also stopped their vehicles and parked near the agents, partially blocking the lanes in the parking lot as the agents attempted to leave the area with the arrestee." [1]

Adrian Andrew Martinez, a U.S. citizen, was among those present. At that time, Mr. Martinez worked at a Walmart, which was located in the same shopping center where immigration enforcement was occurring. Mr. Martinez had just left his workplace to go on his lunch break when he saw the commotion taking place. He then stopped his car, exited, but left

---

[1] U.S. Dep't of Justice, Federal Grand Jury Charges Pico Rivera Man with Impeding Immigration Officers Arresting Illegal Alien in Walmart Parking Lot (Aug. 20, 2025), https://www.justice.gov/usao-cdca/pr/federal-grand-jury-charges-pico-rivera-man-impeding-immigration-officers-arresting.

*UNITED STATES V. MARTINEZ*                                      MOTION TO DISMISS – 6

his car running. Mr. Martinez verbally criticized the officers and protested the arrest. His conduct consisted of speech directed at ICE and Border Patrol officers objecting to the enforcement action.

### C. Physical Detention of Mr. Martinez

During the encounter, Adrian Martinez was violently restrained by federal agents and removed from the scene. He was the only bystander physically restrained, taken to the ground, and then dragged and shoved into a law-enforcement vehicle by his neck by officers before being transported away from the location. Other individuals who allegedly stopped vehicles, blocked lanes, and protested verbally were neither arrested nor charged.

### D. June 18, 2025, Memorandum Alleging Assault

On June 18, 2025, Border Patrol Agent Isaiah A. Hodgson authored a memorandum describing the incident. In that memorandum, Agent Hodgson characterized Mr. Martinez as an "aggressor" (*See* Exhibit A) and alleged that Mr. Martinez physically assaulted him during the encounter.

The memorandum alleges that Mr. Martinez stood in front of the agent's vehicle, threw objects, and struck the vehicle while shouting profanities. Agent Hodgson further asserted that Mr. Martinez made verbal threats, stating that he was "going to fuck [him] up," and failed to comply with commands to leave the area.

According to the memorandum, Agent Hodgson then attempted to move Mr. Martinez out of the vehicle's path, at which point Mr. Martinez allegedly "grabbed ahold of [the agent's] vest and struck [him] in the face with a closed fist." The memorandum further claims that Mr.

Martinez continued to strike the agent and pull items from his vest, allegedly dislodging the agent's radio, knife, duty magazine, earpiece, hat, and glasses.

Agent Hodgson stated that other agents responded to the scene and assisted in restraining Mr. Martinez, and that all equipment was ultimately recovered.

This memorandum formed the factual basis for the government's initial public characterization of the incident as an assault on a federal officer. As described below, subsequent review of the evidence, including surveillance footage and internal law-enforcement assessment, failed to corroborate these allegations, leading the government to abandon the assault theory and pursue a different charge.

### E. Public Allegations of Assault and Deterrent Messaging

Despite the abandonment of the assault charge, the original public statement asserting that Mr. Martinez had assaulted an agent remains accessible online as of this filing.

On June 18, 2025, at approximately 2:02 p.m., Mr. Essayli issued the following public statement on social media:

*"ARRESTED: Adrian Andrew Martinez, 20, of Pico Rivera, the individual in the blue Walmart vest, was arrested for an allegation of punching a border patrol agent in the face after he attempted to impede their immigration enforcement operation, in violation of 18 USC 111. I will repeat, if you impede our agents or strike them, you will end up in handcuffs facing federal criminal charges. Don't do it."* [2]

In response to Mr. Essayli's post, then Border Patrol commander at large Gregory K. Bovino publicly commented on the arrest of Mr. Martinez, citing Mr. Essayli's post as

---

[2] Bilal Essayli (@USAttyEssayli), post on X (June 18, 2025), https://x.com/USAttyEssayli/status/193544296819995469O

evidence that Mr. Martinez "caught a federal case for assault on a federal agent." (*See* Exhibit B.) Mr. Bovino ended his post with "DON'T ASSAULT." (*See* Exhibit B.)

### F.  Video Evidence and Direction to Proceed and Charge

Multiple recordings of the incident circulated publicly after the arrest. The footage clearly does not depict that Mr. Martinez struck any agent in the face or engage in the assault described in the June 18 memorandum.

As reported by *Bloomberg Law,* the footage "suggest[ed] it was the border patrol agents rather than the U.S. citizen employee, Adrian Martinez, using physical force." [3] The emergence of this video materially undermined the government's initial assault narrative and raised serious questions regarding probable cause.

Those concerns were shared internally. *Bloomberg Law* reported that "Essayli […] rejected office supervisors' advice not to charge a 20-year-old Walmart employee for assaulting an immigration officer […]." [4] The article further explained that, after video of the arrest circulated publicly, "an FBI agent felt there was insufficient evidence and declined to sign a complaint attesting probable cause to a judge." These were not ordinary disagreements over charging strategy, but internal concerns regarding whether the evidence supported probable cause in the first place.

Rather than reassess whether prosecution should proceed considering this determination, the then acting U.S. Attorney personally intervened. Mr. Essayli stated that if

---

3 Ben Penn & Maia Spoto, *Trump's LA Prosecutor Orders Cases His Staff Say Lack Evidence*, Bloomberg Law (July 29, 2025), https://news.bloomberglaw.com/us-law-week/trumps-la-prosecutor-orders-cases-his-staff-say-lack-evidence
4 Penn & Spoto, *supra*

they "couldn't get an agent to sign an affidavit, he'd find one himself." [5] Within approximately one day of the FBI agent's refusal, another agent signed off on a different charge, which was conspiracy to impede a federal officer.

## ARGUMENT

### A. The Court has Already Determined that Bilil A. Essayli Was Not Lawfully Serving as Acting United States Attorney

On October 28, 2025, the Honorable Michael Seabright issued an opinion and order holding that Mr. Essayli was not lawfully serving as acting United States Attorney in connection with the prosecution of Defendants Jaime Hector Ramirez ("Ramirez") (Case No. 5:25-cr-264-SSS); Ismael Garcia, Jr. ("Garcia") (Case No. 2:25-cr-655-MEMF); and Ronny Rojas ("Rojas") (Case No. 2:22-cr-00573-FWS).

That ruling remains operative. Mr. Martinez does not seek reconsideration of that determination. The legality of Mr. Essayli's service as acting United States Attorney during June 2025, the timeframe at issue in this case, has been deemed unlawful.

### B. Defendant Does Not Seek Re-Litigation of Issues Already Decided

Adrian does not ask the Court to reconsider its prior findings or revisit the disqualification determination. That issue has been heard and decided. Defendant instead asks the Court to act on its existing ruling by imposing remedies in proportion with the scope of the unlawful conduct and the demonstrated involvement in the charging decision.

---

5 Penn & Spoto, *supra*

*UNITED STATES V. MARTINEZ*                    MOTION TO DISMISS – 10

## C.  The Remaining Question Before the Court is The Appropriate Remedy

Because the Court has already determined that Mr. Essayli lacked lawful authority to act, the question now before the Court centers solely on the appropriate remedy. This is a criminal case where the government exercises its power to deprive a defendant of liberty. In that context, who may lawfully participate in the charging decision is a constitutional and structural question, not a discretionary one.

The evidence before the Court demonstrates that Mr. Essayli was directly involved in advocating for and personally assuring the charging and resulting indictment in this case moved forward. As laid out above, this involvement is reflected in public statements on X and in contemporaneous news reporting, which confirm his participation in the charging process itself. In addition to his direct involvement, it also highlights his personal interest, both politically and otherwise, as he was publicly tacitly using the arrest of Mr. Martinez as a justification of the use of force by immigration agents that was the subject of much political and legal debate at that time.

## D.  In a Criminal Case, Participation by an Unlawfully Authorized Official in The Charging Decision Constitutes a Structural Defect Requiring Dismissal

The grand jury "is a constitutional fixture in its own right." *United States v. Williams*, 504 U.S. 36, 47 (1992) (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977)). It "is not and should not be captive to any of the three branches." *Chanen*, 549 F.2d at 1312. Because of that independence, dismissal of an indictment is an extraordinary remedy, reserved for circumstances in which the charging decision itself, not merely subsequent prosecution conduct, has been compromised.

*UNITED STATES V. MARTINEZ*                                    MOTION TO DISMISS – 11

In criminal prosecutions, courts distinguish between errors that occur after a valid indictment has been issued and defects that infect the charging decision itself. Where an individual who is not lawfully authorized to exercise prosecutorial power participates in the decision to charge and seek an indictment, the defect arises at the inception of the case. Such a defect is structural in nature, is not subject to harmless error analysis, and cannot be cured through post hoc substitution or insulation.

Recent decisions, including those cited below, addressing challenges to indictments based on unlawful appointments or supervision articulate a consistent principle: dismissal is not warranted where defendants rely on speculation, presumed involvement, or mere supervisory authority, but it may be warranted where there is affirmative evidence of direct participation in the charging decision by an unlawfully authorized official. This is a distinction that exists in this case.

In the matters addressed by the Honorable Seabright on October 28, 2025, dismissal was denied because the defendants (Ramirez, Garcia, and Rojas) failed to demonstrate misconduct before the grand jury or a defect in the indictments under Rule 12(b)(3). The Court emphasized that even if the unlawfully appointed official's presumed approval were voided, the indictments remained valid because they were signed by authorized government attorneys and there was no indication of direct involvement by Mr. Essayli in seeking the indictments or supervising the cases. The absence of evidence of charging stage participation was dispositive.

The same distinction underlies the courts' treatment of *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024). There, the Court dismissed the indictment after concluding that Special Counsel Jack Smith's appointment violated the Appointments Clause and that "the actions of Special Counsel Smith in connection with this proceeding must be set aside." *Id.* at

1303. Subsequent courts distinguished *Trump* where indictments were signed by other government attorneys and where there was no evidence that the unlawfully appointed official participated in the indictments or supervised the prosecutions. *See*, e.g., *United States v. Garcia,* 2025 WL2784640, at 15 (D. Nv. Sept. 30, 2025); *United States v. Giraud (Giraud I)*, 2025 WL 2196794, at 7 (D.N.J. Aug 1, 2025).

Importantly, however, those courts emphasized that *Trump* turned on the fact that Special Counsel Smith's involvement was "essentially ubiquitous" and "critically included his seeking of the Superseding Indictment on which the proceeding hinged." *Giraud*, 2025 WL 2196794, at 7 (internal marks omitted). In other words, direct participation in the charging decision, not merely unlawful appointment in the abstract, justified dismissal.

*United States v. Giraud (Giraud II),* 795 F. Supp. 3d 560 reinforces the same principle from a different procedural posture. There, the Court denied discovery into grand jury materials because the defendants failed to make a particularized showing "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." *United States v. Giraud,* 795 F. Supp. 3d 560 at 29, 2025 U.S. Dist. (D.N.J. 2025) (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)). The Court stressed that "[v]ague allegations, bald assertions of impropriety, or speculation" are insufficient. *Id.* That analysis confirms that affirmative evidence of charging-stage taint is the necessary predicate not only for dismissal, but even for discovery.

Lastly, *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020), supplies the remedial framework. *Bundy* recognizes dismissal under the Court's supervisory powers to (1) remedy constitutional violations, (2) preserve judicial integrity, and (3) deter future illegality, but cautions that dismissal—particularly with prejudice—is a "drastic remedy" ordinarily requiring

flagrant misbehavior and substantial prejudice. *Id.* at 1030–31. Courts applying *Bundy* have declined dismissal where defendants could not show interference with the grand jury or prejudice flowing from unlawful supervision.

Taken together, these cases establish a clear rule: dismissal is not appropriate where defendants rely on assumption or generalized unlawful supervision, but it is appropriate where there is concrete evidence that an unlawfully authorized official directly participated in advocating for or seeking the indictment. That standard is satisfied here in Mr. Martinez's case. Unlike in the cases where dismissal was denied, Mr. Martinez does not rely solely on presumed approval, abstract supervisory authority, or speculation about what may have occurred before the grand jury. Mr. Martinez presents affirmative, external evidence, including a public statement on X and contemporaneous news reporting, demonstrating that Mr. Essayli directly advocated for the charging decision and pushed the indictment in this case.

This evidence places Mr. Martinez's case squarely within the category of cases exemplified by *Trump*, not those distinguished in *Garcia*, *Giraud I*, or *Giraud II*. The fact that other government attorneys signed the indictment does not cure a defect where the decision to seek the indictment was materially influenced by an individual who lacked lawful authority to act. The present record strongly suggests that the continuation of the prosecution and resulting indictment were materially influenced by Mr. Essayli's direct involvement and intervention.

Allowing the prosecution to proceed under these circumstances would permit the government to continue relying on an indictment obtained through the material involvement of an individual the Court has already determined lacked lawful authority to act as acting United States Attorney. Under *Williams*, *Trump*, *Giraud*, and *Bundy*, dismissal is therefore the appropriate and necessary remedy.

**E. Substitution or Insulation is Inadequate**

The government may contend that any defect can be cured by removing Mr. Essayli from further participation, as his role may be performed by others and are delegable duties. However, that argument fails in this posture.

In criminal cases, substitution may cure defects in trial management, but it cannot cure a tainted charging decision. Once an indictment has been sought with the participation of an unlawfully authorized official, the constitutional violation has already occurred. To hold otherwise would permit the government to benefit from an indictment obtained through unlawful means, so long as the defect is addressed only after the fact.

**F. Discovery Request**

Should the Court decline to dismiss the indictment at this stage, Mr. Martinez respectfully requests limited and narrowly tailored discovery directed at the extent of Mr. Essayli's participation in, influence over, and involvement with the charging and indictment decisions in this case. The requested discovery is necessary to determine the nature and scope of Mr. Essayli's role in initiating, encouraging, directing, approving, or otherwise materially influencing the prosecution of Mr. Martinez.

**CONCLUSION**

For the foregoing reasons, Defendant Adrian Martinez respectfully requests that this Court dismiss the indictment in its entirety with prejudice. The record before the Court demonstrates that the charging and resulting indictment were materially influenced by Mr.

Essayli, an individual the Court has already determined lacked lawful authority to serve as acting United States Attorney at that time.

In the alternative, should the Court decline to dismiss the indictment at this stage, Mr. Martinez respectfully requests that the Court order limited and narrowly tailored discovery directed at the extent of Mr. Essayli's participation in and influence over the charging and indictment decisions in this case.

Respectfully submitted,

Dated: May 14, 2026

/s/ Garrett Miller_____
GARRETT MILLER
CHRISTOPHER MILLER
FABIANNA MILLER

*Attorneys for Defendant Adrian Martinez*

# Exhibit A

211 West Aten Road
Imperial, CA 92251

ELC 50/6-C

**U.S. Customs and Border Protection**

June 18, 2025

MEMORANDUM FOR:    Gregory K. Bovino
Chief Patrol Agent
El Centro Sector

THROUGH:    Jerami J. Cheatwood
Acting Patrol Agent in Charge
El Centro Station

FROM:    Isaiah A. Hodgson
Border Patrol Agent
El Centro Station

SUBJECT:    Assault on an Agent

Immigration and Customs Enforcement (ICE) is currently executing Operation At Large targeting immigration violators in Los Angeles, California. The operation focuses on law enforcement operations in direct support of Presidential Executive Orders while ensuring personnel safety and maintaining tactical control while operating in a confined, civilian-heavy environment.

The Department of Homeland Security (DHS) and Department of Justice (DOJ) have developed a 6-month, nationwide operation to significantly increase Operation At Large arrests of illegal aliens, focusing on individuals with executable final orders of removal. In May 2025, this operation commenced deploying 1,000 interagency teams daily across 25 Areas of Responsibility (AORs), operating 7-days a week. The operation prioritizes regions with the highest concentrations of executable final orders, as identified by the ATrac (Alien Tracker) system1, with resources dynamically reallocated weekly to maximize efficiency. The operation integrates personnel from the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO), Homeland Security Investigations (HSI), United States Border Patrol (USBP), Office of Field Operations (OFO), Air and Marine Operations (AMO), Office of Information Technology (OIT) and, Department of Justice (DOJ), Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Marshals Service (USMS), Internal Revenue Service (IRS) Criminal Investigation Division (CID), and National Guard, with additional support from 287(g) partners in their assigned jurisdictions. The operation aims to enhance public safety and enforce immigration laws.

On Tuesday June 17, 2025 I Border Patrol Agent Isaiah A Hodgson was conducting interior immigration enforcement operations near Pico Rivera, CA. I was in full uniform and wearing my ballistic vest with identifiers badges and nameplate.

Assault on an Agent
Page 2

At approximately 8:45 A.M I entered the Lowe's parking lot in my marked Border Patrol
Vehicle. This Lowe's is located at 8600 E Washington Blvd in Pico Rivera, California. As I
entered the Lowes parking lot, I obtained visual of an individual cleaning the parking lot. Upon
observing us in our marked Border Patrol vehicle the subject started running in a direction away
from us. I approached the individual in my vehicle and got out to investigate as to why he was
running away.   In a rush to flee he left his janitorial cart in the parking lot and ran to the middle
of the street where I detained him.

I identified myself as a Border Patrol Agent and the subject later identified as MONTES-Herrera,
Vivaldo D.O.B 04/20/1970 admitted to being born in Mexico and is a citizen of Mexico and here
in the United States without proper immigration documents. At this time, I placed MONTES
under arrest for title 8 U.S.C 1325. After placing MONTES in my marked unit, we attempted to
leave the area when approximately 20 subjects surrounded us blocking my unit with 3 vehicles,
front, passenger side and rear of the vehicle.

An aggressor later identified as ADRIAN ANDREW MARTINEZ D.O.B 02/28/2005 stood in
front of my vehicle preventing my from leaving, he was throwing water bottles and hitting my
marked unit with his hands while yelling  FUCK ICE AND BORDER PATROL he also said  HE
WAS GOING TO FUCK ME UP I got out and ordered MARTINEZ to stop and to leave the
area. He failed to comply to my orders. I then went to move him out of the way to create enough
space for my vehicle to exit the hostile environment. MARTINEZ grabbed ahold of my vest and
struck me in the face with a closed fist. I attempted to put MARTINEZ in my marked unit for
assaulting a Federal Agent. MARTINEZ continued grabbing onto my vest and was pulling items
off my vest while striking me in the head and torso. MARTINEZ struck me multiple times which
was able to remove my radio, knife, duty magazine, earpiece, hat and glasses. Other agents
responded to the scene and assisted me. As MARTINEZ was removing the items from my vest
he was dropping them on the ground so that I did not have use of them. All items were recovered
by other agents on scene.

With the assistance of other agents, we were able to place MARTINEZ in a marked Border
Patrol vehicle and leave the area. We found a safe location where we were able to transfer
MARTINEZ to transport. MARTINEZ was asked at the transportation location if he required
any medical treatment as to which he declined. Transport took MARTINEZ to the ERO facility
in Los Angeles, California.

# Exhibit B

2:58

← **Post** •••

 **Acting U.S. Attorney Bill Essayli reposted**

 **Commander Op At Large CA...** ✔    **X.com**
@CMDROpAtLargeCA

Once again, a false narrative is and was being pushed out on the arrest of a U.S. citizen in Pico Rivera, CA. Don't take our word for it, check out @USAttyEssayli take on it. This subject just caught a federal case for assault on a federal agent. DON'T ASSAULT.

🏛 **Acting U.S. Attorney Bill Ess...** ✔ ⬤ · 6/18/25
ARRESTED: Adrian Andrew Martinez, 20, of Pico Rivera, the individual in the blue Walmart vest, was arrested for an allegation of punching a border patrol agent in the face after he attempted to impede their immigration enforcement operation, in violation for 18 USC 111. I will Show more



Post your reply

